# EXHIBIT 1

Patrick J. Stueve, Mo. Bar #37682
Todd E. Hilton, Mo. Bar #51388
STUEVE SIEGEL HANSON LLP
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
Telephone: (816) 714-7100
stueve@stuevesiegel.com
hilton@stuevesiegel.com

Don M. Downing, Mo. Bar #30405
Gretchen Garrison, Mo. Bar #33963
Cort A. VanOstran, Mo. Bar #67276
GRAY, RITTER & GRAHAM, P.C.
701 Market Street, Suite 800
St. Louis, Missouri 63101
Telephone: (314) 241-5620
ddowning@grgpc.com
ggarrison@grgpc.com
cvanostran@grgpc.com

*Attorneys for Intervenors*
*Ryan Tomlinson and Carol Richardson*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SCOTT GILMORE, et al.<br><br>    Plaintiffs,<br><br>vs.<br><br>MONSANTO COMPANY,<br><br>    Defendant. | MDL No. 2741<br><br>Case No. 3:21-cv-08159-VC<br><br>**OPPOSITION TO JOINT MOTION FOR SUGGESTION OF REMAND TO THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE**<br><br>Date: January 6, 2022<br>Time: 10:00 a.m.<br>Place: Via Zoom Webinar<br>Judge: Hon. Vince G. Chhabria |

## <u>TABLE OF CONTENTS</u>

INTRODUCTION AND ISSUE TO BE DECIDED.................................................................... 1

BACKGROUND / STATEMENT OF FACTS ........................................................................ 2

    A.   Monsanto Unsuccessfully Sought Global Settlement in the MDL. ................................. 2

    B.   Monsanto Faces Significant Liability in the *Tomlinson* Action. ...................................... 3

    C.   *Gilmore* Counsel and Plaintiffs Pursued Failed Retailer Cases..................................... 3

    D.   Gilmore Filed Suit in Delaware and Quickly Settled with Monsanto. .......................... 5

    E.   Settlement Largely Benefits Monsanto and *Gilmore* Counsel and Plaintiffs. .................. 7

ARGUMENT ........................................................................................................................... 8

    A.   Applicable Standards ....................................................................................................... 8

    B.   Suggestion of Remand Would Be Inappropriate. ........................................................... 9

        1.   *Gilmore* shares common questions with other MDL cases. ...................................... 9

        2.   Movants' "case-specific" argument is meritless. ..................................................... 11

        3.   Efficiency is served by transfer. .............................................................................. 13

        4.   The proposed settlement affects cases in the MDL................................................... 14

CONCLUSION....................................................................................................................... 15

# **TABLE OF AUTHORITIES**

Cases

*Arora v. Midland Credit Mgmt., In*c.,
    2017 WL 3263110 (S.D. Cal. Aug. 1, 2017) ............................................................................ 10

*Borup v. CJS Sols. Group, LLC*,
    2019 WL 2137369 (D. Minn. May 16, 2019) ......................................................................... 12

*Briseno v. Henderson*,
    998 F.3d 1014 (9th Cir. 2021) ................................................................................................ 12

*Figueroa v. Sharper Image Corp*.,
    517 F. Supp. 2d 1292 (S.D. Fla. 2007) .................................................................................. 12

*Hildes v. Arthur Andersen LL*P,
    2014 WL 1571330 (S.D. Cal. Apr. 16, 2014) ..................................................................... 8, 14

*In re Air Crash Near Nantucket Island, Massachuset*ts,
    162 F. Supp. 2d 694 (U.S. Jud. Pan. Mult. Lit. 2001) ............................................................ 13

*In re Cmty. Bank of N. Virginia*,
    418 F.3d 277 (3d Cir. 2005)................................................................................................... 12

*In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Practices & Antitrust Lit*ig.,
    2019 WL 294803 (D. Kan. Jan. 23, 2019) ......................................................................... 8, 13

*In re Maxim Integrated Prods.*,
    2015 WL 1757779 (W.D. Pa. Apr. 17, 2015).................................................................... 10, 13

*In re Patenau*de,
    210 F.3d 135 (3d Cir. 2000)................................................................................................... 10

*In re Roundup Prods. Liab. Lit*ig.,
    364 F. Supp. 3d 1085 (N.D. Cal. 2019) ................................................................................. 11

*In re Valsartan N-Nitrosodimethylamine (NDMA) Contamination Prod. Liab. Litig.*,
    363 F. Supp. 3d 1378 (U.S. Jud. Pan. Mult. Lit. 2019) ............................................................ 9

*In re WellPoint, Inc. Out-of-Network "UCR" Rates Litig.*,
    2014 WL 12588474 (C.D. Cal. Dec. 4, 2014) ..................................................................... 8, 14

*In re: Ocwen Loan Servicing, LLC, Fair Debt Collection Practices Act (FDCPA) Litig.*,
    988 F. Supp. 2d 1367 (U.S. Jud. Pan. Mult. Lit. 2013) ........................................................... 14

*In Re: Toyota Motor Corp. Prius HID Headlamp Prods. Liab. Litig.*,
    754 F. Supp. 2d 1380 (U.S. Jud. Pan. Mult. Lit. 2010) ........................................................... 14

*In re: Yasmin, Yaz (Drospirenone) Mktg., Sales Pracs. & Prod. Liab. Litig.*,
    655 F. Supp. 2d 1343 (U.S. Jud. Pan. Mult. Lit. 2009) ............................................................ 9

*Langdon v. Google, Inc*.,
    474 F. Supp. 2d 622 (D. Del. 2007) ........................................................................................ 6

*Marshall v. Priceline.com Inc*.,
    2006 WL 3175318 (Del. Super. Ct. Oct. 31, 2006) ................................................................ 6

*Martin v. Cargill, Inc*.,
    295 F.R.D. 380 (D. Minn. 2013) ............................................................................................ 12

*Plubell v. Merck & Co., I*nc.,
    289 S.W.3d 707 (Mo. App. W.D. 2009) .................................................................................. 3

*Reynolds v. Beneficial Nat. Bank*,
    288 F.3d 277 (7th Cir. 2002) .................................................................................................. 12

*Roes, 1-2 v. SFBSC Mgmt., LLC*,
    944 F.3d 1035 (9th Cir. 2019) ................................................................................................ 12

*Stephenson v. Capano Dev., Inc*.,
    462 A.2d 1069 (Del. 1983) ....................................................................................................... 6

*Theis v. Viewsonic Corp*.,
    2013 WL 1632677 (D. Del. Apr. 16, 2013) ............................................................................. 6

Statutes

28 U.S.C. § 1407(a) ..................................................................................................................... 8

Del. Code ann., tit. 6, § 2512 ...................................................................................................... 6

Mo. Rev. Stat. § 407.010 .............................................................................................................. 1

Section 1407 ............................................................................................................................... 10

Other Authorities

4 Newberg on Class Actions § 13:60 (5th ed.) ......................................................................... 12

## INTRODUCTION AND ISSUE TO BE DECIDED

Ryan Tomlinson and Carol Richardson ("*Tomlinson* plaintiffs") are named plaintiffs in a certified class action in Missouri (Case No. 1916-CV22788) asserting Monsanto's violations of the Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.010 et seq. ("MMPA"). Facing unsuccessful resistance to certification and significant liability at trial, Monsanto went around *Tomlinson* and negotiated settlement with parties and counsel with every incentive to accept a bargain-basement deal rife with red flags of reverse auction and inadequate representation.  Mr. Gilmore, who purchased Roundup in Oregon and previously sued Monsanto in Oregon, had voluntarily dismissed that case.  About a month after this Court first rejected global settlement in the MDL, he filed an action in Delaware, *Gilmore v. Monsanto Co.*, (now Case No. 3:21-cv-08159-VC, N.D. Cal.) ("*Gilmore*"), asserting a single Delaware consumer protection claim, on a nationwide basis, that he himself lacks statutory standing to bring.  Monsanto cabined *Gilmore* off from the MDL and secreted settlement discussions from *Tomlinson* plaintiffs and Missouri courts. Within a month of filing, Gilmore and Monsanto had engaged a mediator. With zero discovery in that case, they reached settlement in one day, formalized in an agreement executed by Gilmore and other clients of *Gilmore* counsel[1] who, having failed in their own cases, were not even parties to the action.  They also sought to enjoin all settlement class members from pursuing any action related to released claims "or the facts and circumstances relating thereto."  The settlement would release economic-loss claims of all purchasers of covered Roundup products including *Tomlinson* class members and MDL plaintiffs against Monsanto and a vast array of other persons and entities.

The JPML has now ordered *Gilmore* transferred to this MDL.  *Id.*, Dkt. No. 65. Monsanto and Gilmore plaintiffs ("Movants") seek a suggestion of remand based on arguments already made

---

[1]  "Gilmore counsel" refers to lawyers at Milstein Jackson Fairchild & Wade, LLP.

and rejected.  The issue is whether this Court should suggest remand given that, as found by the JPML: *Gilmore* undeniably "involves common questions of fact" with other cases in the MDL; this Court is the one most familiar "with … the issues … and past attempts to resolve various aspects of the litigation through settlement" (whereas the Delaware court "lacks this experience"); and transfer "will serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation."  *Id.* at 2, 3.[2]

## BACKGROUND / STATEMENT OF FACTS

### A.    Monsanto Unsuccessfully Sought Global Settlement in the MDL.

Monsanto has twice sought global settlement in the MDL.  Much like the situation here, it targeted a case with little prior activity, stipulated to amended complaints, and contemporaneously sought preliminary approval of settlement. Monsanto's vehicle in the MDL was the *Ramirez* action, Case No. 3:19-cv-02224-VC ("*Ramirez*").   This Court on July 6, 2020, expressed significant skepticism of the first proposal (MDL Dkt. No. 11182 at 3) and settlors returned with another.  *Ramirez* Dkt. No. 24-2, Sett. Agrmt. ("SA"). The new proposal covered persons who had not "commenced an individual, non-class lawsuit or retained counsel for … individual, non-class personal injury *or false advertising claims … in any way relating to* or in connection with [Roundup] exposure."  SA § 1.1(a) (emphasis added); *see also id.*, § 2.1 (70) (defining "Roundup Claims" to include tort claims, warranty claims, and consumer protection act claims).[3]  This Court denied preliminary approval on May 26, 2021.  MDL Dkt. No. 13115.

---

[2]  Page citations to docket filings are to the ECF page number when available.

[3] The second settlement proposal also included a then inexplicable paragraph that *Tomlinson* and other actions, including *Gilmore* (and several "Related Actions") were not subject to the four-year stay. SA at § 30.11; *see also Gilmore* Dkt. No. 26-1 § A (45) (listing "Related Cases"). It appeared, however, that the settlement still applied, including release of punitive damages. Assuming that *Gilmore* counsel would also have concerns, *Tomlinson* counsel attempted to contact them without response.  *Gilmore* Dkt. No. 44, Garrison Decl. at ¶¶ 27–28.

**B.      Monsanto Faces Significant Liability in the *Tomlinson* Action.**

*Tomlinson* has been ongoing since 2019. The MMPA permits class actions and Missouri law is favorable to certification. *Gilmore* Dkt. No. 41-1 at 84–86. The trial court certified a class of "all Missouri residents who purchased Roundup for personal, family, or household use." Dkt. No. 44, Garrison Decl. at ¶¶ 3–6. On April 1, 2021, Monsanto moved for reconsideration and interlocutory appeal; both were denied. *Id.* at ¶¶ 7–8.[4] It then petitioned for writ of prohibition (*id.* at ¶ 9), also denied. The MMPA does not require reliance or transaction causation. *Plubell v. Merck & Co., Inc.*, 289 S.W.3d 707, 714 (Mo. App. W.D. 2009). Monsanto faces significant compensatory and punitive damages. Dkt. No. 41-1, Am. Pet. at ¶¶ 87–89. With discovery ongoing, trial was scheduled for March 6, 2023. Dkt. No. 44, Garrison Decl. at ¶¶ 11, 17.

**C.      *Gilmore* Counsel and Plaintiffs Pursued Failed Retailer Cases.**

Meanwhile, *Gilmore* counsel was pursuing cases against retailers. Movants represent that "plaintiffs have brought more than a dozen similar actions" against Monsanto and retailers. Mot. at 9 & n. 2 (listing cases). In fact, *only two* were brought against Monsanto prior to the case in Delaware. One (by Gilmore) was abandoned; the other (by Ezcurra) failed. And to say the actions entailed "years of litigation" (*id.* at 10) implies more vigor than occurred. Few cases entailed discovery.[5] Some were dismissed for lack of sufficient allegations of wrongful conduct by *the retailer* and/or defenses specific to California and Florida law. Most were dismissed voluntarily.

---

[4]  Although Monsanto sought a stay, it did not advise these courts or *Tomlinson* plaintiffs that settlement had been reached in principle. *Id.* at ¶¶ 7–8, 31.

[5]  No discovery occurred in *Gilmore* at all. *Gilmore* Dkt. No 25 at 33. Appreciating that problem, *Gilmore* counsel points to discovery in two other cases: *Ezcurra*, involving a limited putative class of Florida purchasers and undisclosed "thousands" of pages of documents (*id.* at 12–13); and *Weeks II*, a case *not* against Monsanto, with 17,000 pages of documents. *Id.* at 15. In *Tomlinson*, by contrast, 635,200 pages of documents have been produced. Dkt. No. 44 at ¶¶ 11, 17.

Mr. Gilmore first sued Monsanto in Oregon in July 2019. Case No. 3:19-cv-01123-SB (D. Ore.), Dkt. No. 1. That case was abandoned.[6] Of the other plaintiffs proposing to represent the putative settlement class, only one (Ezcurra) had previously sued Monsanto. Everyone else filed lawsuits against retailers. There were five federal cases in California. *Weeks I* was voluntarily dismissed with no substantive activity.[7] *Weeks II* was dismissed based on California's Proposition 65. After a pleading amendment, the court again dismissed (with prejudice), finding insufficient allegations to hold the retailer liable.[8] *Hanna I* and *Taylor* were similarly dismissed and abandoned after amended pleadings and new motion by the retailer.[9] *Williams* was amended then voluntarily dismissed without ruling on dismissal motions.[10] Two other cases in Arkansas were abandoned.[11]

---

[6] Gilmore, who purchased Roundup in Oregon, initially asserted claims on behalf of other Oregon purchasers (*Id.* at ¶¶ 22, 65, 80) later expanded to nationwide scope. He sought full refund (or alternatively, statutory damages) and punitive damages. *Id.* at ¶¶ 98–99, 103; *see also* Dkt. No. 34 at ¶¶ 123–24, 128. Other than the initial, and an amended complaint, the docket reveals no litigation activity other than voluntary dismissal in February 2020 without responding to Monsanto's motion to dismiss. Dkt. No. 42.

[7] *Weeks v. Lowe's Home Ctrs., LLC*, No. 2:19-cv-06828 (C.D. Cal.), Dkt. Nos. 1, 15.

[8] *Weeks v. Home Depot U.S.A., Inc.*, No. 2:19-cv-06780-FMO-AS (C.D. Cal.), Dkt. Nos. 65, 77.

[9] *See Hanna et al. v. WalMart Inc.*, No. 5:20-cv-01075 (C.D. Cal.), Dkt. No. 39 (dismissal based on Prop. 65 and failure to sufficiently allege that retailer participated in unfair practices), Dkt. Nos. 41 and 47 (voluntary dismissal two days after oral argument set on new motion to dismiss); *Taylor v. Costco Wholesale Corp*, No. 20-cv-00655-KJM-DMC (E.D. Cal.), Dkt. No. 22 (dismissal for lack of sufficient allegations of participation in unfair practices), Dkt. Nos. 23, 24, 33 (voluntary dismissal after amendment and new motion to dismiss).

[10] *Williams v. Lowe's Home Ctrs.,* No. 5:20-cv-01356 (C.D. Cal.), Dkt. Nos. 14, 17, 18, 28.

[11] *See Jewell et al. v. Walmart, Inc.*, No. 4:19-cv-04088 (W.D. Ark.), Dkt. Nos 37-38 (retailer dismissal motions asserting, *e.g.*, that consumer protection act contains a safe harbor and does not permit class actions), Dkt., Nos. 27, 33, 37–40 (after motion and amendments, voluntary dismissal without responding to new motion to dismiss); *Boyette et al v. Lowe's Cos., Inc.*, No. 4:19-cv-04119 (W.D. Ark.), Dkt. No. 29 (voluntary dismissal without motion to dismiss pending).

Remaining identified cases (Mot. at 9, n.2) were filed against retailers in state courts in Florida (by other counsel) and in California (*Hanna II*, after federal dismissal in *Hanna I*).[12]  Three were dismissed voluntarily. *See Gilmore* Dkt. No. 25 (Appx.) at 50–53 (description of "Related Cases").  Four were removed and remanded with no (or scant) activity after remand.[13]

As their own suits failed, *Gilmore* counsel joined lawyers with a case against Monsanto in Florida.  *Ezcurra v. Bayer AG and Monsanto Co.* (filed in February 2020 by the Rubenstein law firm), asserted a claim under Florida's Deceptive and Unfair Trade Practices Act on behalf of Florida purchasers "with a credit or debit account." Case No. 9:20-cv-80524-DMM (S.D. Fla.), Dkt. No. 1–2 at ¶ 99.[14]  Within five weeks of request for and entry of a protective order (Dkt. Nos. 41–42), the court dismissed based on a safe harbor provision.  Dkt. No. 63 at 4–10 (Aug. 7, 2020).

### D.     Gilmore Filed Suit in Delaware and Quickly Settled with Monsanto.

Gilmore filed suit in Delaware on August 19, 2020.  *Gilmore* Dkt. No. 1.  Gilmore alleged that "Monsanto was and is aware Roundup® has the potential to cause users to develop cancer" but "failed to convey this information to consumers[.]" Dkt. No. 14, First Am. Compl. at ¶¶ 2, 6.

---

[12] *See Hanna v. Walmart, Inc*., No. CIV SB 2100789 (Cal. Super. Ct., San Bernardino Cty. Jan. 12, 2021) (Complaint). Walmart never even appeared in that case. *See id*. (Apr. 12, 2021 Case Management Statement).  Hanna voluntarily dismissed.  *See id*. (April 14, 2021 Order Granting Voluntary Dismissal).

[13] *See Lamerson v. Walmart Stores, Inc.,* No. 50-2019-CC-009139 (Cty. Ct. 15th Cir. Palm Beach Cty., Fl.) (most recent activity Mar. 1, 2021 dismissal for lack of activity after denying remand reconsideration); *Shelly v. Target Corp.,* No. 50-2019-CC-010718 (Cnty. Ct. 15th Cir. Palm Beach Cty., Fl.) (most recent activity Oct. 2, 2019, copy of remand order); *Biddle v. Lowe's Home Ctrs. LLC,* No. 2019-cc-011405 (Cnty. Ct. 15th Cir. Palm Beach Cty., Fl.) (most recent activity Nov. 7, 2019 noting remand order); *Morley v. Ace Hardware Corp.*, No. CONO-19-010648 (Cnty. Ct. 17th Cir. Broward Cnty., Fla.) (most recent activity Nov. 18, 2019 notice of removal).

[14] *See id*., Dkt. No. 1-2 (complaint filed in Florida state court and removed). "Product" was then defined as Roundup sold at Home Depot.  Dkt. No. 1-2 at ¶ 17. "Credit and debit account" purchases represented about half of such sales. Dkt. No. 1 (Removal Notice) at ¶ 24. *Gilmore* counsel appeared in *Ezcurra* on May 26, 2020.  Dkt. No. 37 at ¶ 7.

He made numerous allegations about glyphosate, scientific and regulatory determinations, and Monsanto's manipulations on safety.  *Id*. at ¶¶ 30-59, 84–92.  He asserted a single claim under the Delaware Consumer Fraud Act ("DCFA"), on a nationwide basis, notwithstanding that he neither lives, nor purchased Roundup, in Delaware.  *Id*. at ¶¶ 102–103.[15]  Within a month, *Gilmore* counsel and Monsanto hired a mediator.  *See* Dkt. No. 27, Welsh Decl. at ¶ 4 (mediator retained on September 24, 2020).  Mediation occurred on February 16, 2021.  *Id*. at ¶ 6.  Settlement in principle was reached the same day.  Dkt. No. 26, Wade Decl. at ¶ 14.  A settlement agreement was executed on June 9, 2021 (*id*. at ¶ 15).  Parties include Gilmore and seven others – Weeks, Taylor, Hanna, Boyette, Ezcurra, Jewell, and Williams – none of whom were then plaintiffs in the action, all of whom had lost or abandoned prior cases, and only one of whom (Ezcurra) had even previously sued Monsanto.  Dkt. No. 26-1. They (along with warranty claims) were added by post-settlement amendment to which Monsanto stipulated.  Dkt. Nos. 21, 22.  As with Gilmore, none live, or purchased Roundup, in Delaware.  Dkt. No. 22, ¶¶ 13-20, 109, 113, 116, 119, 122, 125, 128, 131. Although available,[16] punitive damages were never requested although Gilmore had previously done so in Oregon and alleged Monsanto's misconduct and large punitive awards in other cases. *Id*. ¶¶ 60–62, 89–99. Three days after filing the Second Amended Complaint, *Gilmore* plaintiffs moved to certify a nationwide class and for preliminary approval of settlement.  Dkt. Nos. 24, 25.

---

[15] The DCFA is limited to "practices … within this State."  Del. Code ann., tit. 6, § 2512).  *See Theis v. Viewsonic Corp*., 2013 WL 1632677, at *2 (D. Del. Apr. 16, 2013) (claim by California consumer purchasing product in California failed); *Langdon v. Google, Inc*., 474 F. Supp. 2d 622, 633–34 (D. Del. 2007) (DCFA limited to actions within Delaware). Monsanto's incorporation in Delaware is insufficient as a matter of law. *Theis*, 2013 WL 1632677, at *2; *Marshall v. Priceline.com Inc*., 2006 WL 3175318, at *2 (Del. Super. Ct. Oct. 31, 2006).  Monsanto itself argued failure to plausibly allege the required link with Delaware.  Dkt. No. 16 at 18.

[16] *See Stephenson v. Capano Dev., Inc*., 462 A.2d 1069, 1076–77 (Del. 1983) (if the fraud is gross, oppressive, or aggravated, plaintiff may recover punitive damages under Delaware act).

**E.**     **Settlement Largely Benefits Monsanto and *Gilmore* Counsel and Plaintiffs.**

The proposed settlement covers all persons who "purchased [Roundup] Products ... other than for resale or distribution."  JPML Dkt. No. 2437*, Ex. A at § A (52) ("Am. Sett. Agrmt.").  Settlement is on a claims-made basis.  *Gilmore* Dkt. No. 25 at 9.  Monsanto's exposure is capped at a ceiling of $45 million with a floor of $23 million, in either case a small fraction of potential liability to a nationwide class.[17]  These amounts are inclusive of, *inter alia*, service awards and attorneys' fees.  Am. Sett. Agrmt. at § D.1.  Regardless of how much Monsanto ends up paying class members, it agrees to a fee request of 25% of the ceiling amount.  *Id*. at § F.1. If approved, a $11.25 million fee is taken out of settlement funds, which, at floor level, represents a staggering 49% of funds otherwise available for claimants. Monsanto also agreed to support *Gilmore* counsel in arguing that failed work in other (principally retailer) cases, "is appropriately considered" in assessing reasonableness of the fee.  *Id.* at § F.2.[18]  *Gilmore* plaintiffs obtain agreement to a $5,000 service award each.  *Id*. at § F.1. Monsanto gains release for itself and (without indication of financial contribution), retailers, distributors, marketers, sellers, and anyone acting on its behalf.  *Id*. at § A (48).  The release covers all claims other than personal injury and medical monitoring "regardless of legal theory or relief" related to any misleading statements or omissions and any

---

[17]   In Delaware, *Gilmore* plaintiffs did not provide information on expected recovery at trial. Rather, they relied on the opinion of, and report by D.C. Sharp previously prepared in the *Ezcurra* case. *Gilmore* Dkt. 25 at 46; Dkt. No. 29 at ¶¶ 3, 6; Dkt. No. 35 at ¶ 3.  There, Sharp limited analysis to a single Roundup product sold in Florida. Dkt. No. 35, Report at ¶ 3. He did not provide a damages calculation in *Gilmor*e, and both sales data and damages calculations were *redacted* from his Florida report.  *Id*. at ¶¶ 14, 28, 29, 31, 34.  The "price premium" theory is heavily discounted from prior actions in which full refund was sought, including by Gilmore in Oregon. *See supra*, n. 6.  According to Monsanto, sales were "over $52 million" in Florida alone. *Ezcurra*, Case No. 9:20-cv-80524, Dkt. No. 1 (Notice of Remand) at ¶ 24.

[18]   The agreement also provides that Class Counsel will "ensure that plaintiffs in any pending Related Action ... consent to this Agreement and agree to stay or dismiss any such actions pending final approval of this Agreement."  *Id.* at § B.9.  These actions include *Ezcurra* (on appeal), *Weeks* (on appeal) and state cases *Lamerson*, *Shelly*, *Biddle*, and *Morley*.  *Gilmore* Dkt. No. 25 at 50.

"economic loss or injury" pertaining to carcinogenicity or any other health effects of Roundup Products. *Id.* at § L.1. This would eliminate economic-injury claims of *Tomlinson* plaintiffs, Missouri class members, and all other purchasers of Roundup lawn and garden products. *See id.* at § A (45) & Ex. A (listing "Products"). Movants also seek to enjoin class members from pursuing any action relating to Released Claims, "*or the facts and circumstances relating thereto*." *Gilmore* Dkt. No. 24-1, Proposed Order at ¶ 17 (b) (emphasis added).

*Tomlinson* plaintiffs moved to intervene in Delaware, attaching oppositions to the motions to enjoin and for preliminary approval. Dkt. Nos. 39–41, 41-1 & 41-2. Movants opposed intervention. Dkt. Nos. 46, 47, 54. Monsanto also filed another request for stay with the Missouri trial court, this time disclosing settlement, which succeeded. Dkt. No. 51-1. Brian Webb moved to transfer on July 28, 2021. JPML Dkt. No. 2400. *Tomlinson* plaintiffs filed a brief in support. Dkt. No. 2436. On October 8, 2021, the JPML ordered transfer, finding that *Gilmore* involves common questions with other actions in the MDL, this Court has greatest familiarity with issues and past attempts at settlement, and transfer "will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions." Dkt. No. 65 at 2–3.

## ARGUMENT

### A.    Applicable Standards

Transfer is proper when a case involves "one or more common questions of fact" and the JMPL determines, as it did here, that it "will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions." 28 U.S.C. § 1407(a). Where, as here, pre-trial proceedings have not been completed, Movants must show good cause that a remand is warranted. *In re WellPoint, Inc. Out-of-Network "UCR" Rates Litig.*, 2014 WL 12588474, at *2 (C.D. Cal. Dec. 4, 2014); *Hildes v. Arthur Andersen LLP*, 2014 WL 1571330, at *2 (S.D. Cal. Apr. 16, 2014); *In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Practices & Antitrust Litig.*,

2019 WL 294803, at *4 (D. Kan. Jan. 23, 2019).  Movants come nowhere close to doing so.
Indeed, virtually all arguments they raise were already considered, and rejected, by the JPML.

### B.      Suggestion of Remand Would Be Inappropriate.

#### 1.      *Gilmore* shares common questions with other MDL cases.

Unquestionably, *Gilmore* shares common questions with other cases in the MDL.  Movants
admit that "there is some factual overlap" (Mot. at 7), and as found by the JPML, "*Gilmore*
involves many of the same factual questions regarding the alleged toxicity of Roundup, its
potential to cause NHL, and Monsanto's failure to disclose this in its marketing."  *Gilmore* Dkt.
65 at 2.  *Gilmore* counsel have conceded as much, representing that they relied on "discovery from
personal-injury litigation" in the MDL.  Dkt. No. 25 at 44.

That *Gilmore* involves a consumer fraud and (post-settlement) warranty claims is of no
moment.  The MDL *also* involves such claims, and indeed Monsanto already sought to globally
settle them.  That *Gilmore* involves purchase-related loss also is immaterial.  The JPML has "never
held" that this MDL "is limited to actions that allege *only* injury from NHL" and "[w]here the
*actions* arise from a common factual core, the presence of additional facts or differing legal
theories is not a significant obstacle to centralization."  Dkt. No. 65 at 2, n. 2.[19]  Movants contend
that causation and materiality are "significantly different here," going so far as to suggest that in
*Gilmore*, it is enough that Monsanto failed to disclose "the ongoing controversy surrounding the
products' alleged health risks."  Mot. at 7, 16, 18.  The JPML was aware of such arguments and

---

[19]   The JPML commonly centralizes economic-loss with personal-injury claims. *E.g., In re:
Yasmin, Yaz (Drospirenone) Mktg., Sales Pracs. & Prod. Liab. Litig*., 655 F. Supp. 2d 1343, 1344
(U.S. Jud. Pan. Mult. Lit. 2009) (Panel "has frequently combined actions involving claims relating
to sales and marketing of medications with actions involving personal injury claims"); *In re
Valsartan N-Nitrosodimethylamine (NDMA) Contamination Prod. Liab. Litig.*, 363 F. Supp. 3d
1378, 1382 n.9 (U.S. Jud. Pan. Mult. Lit. 2019) (collecting cases in which Panel consolidated
economic-loss with personal-injury claims).

rejected them.  *See* JPML Dkt. No. 2437, Gilmore Opp. Transfer at 2, 9–10.  Even Monsanto

recognized that whether "glyphosate causes cancer is common among the actions."  JPML Dkt.

No. 2438, Mon. Opp. Transfer at 13.  *Gilmore* plaintiffs allege that Roundup "has the potential to

cause users to develop cancer" as well as evidence supporting that conclusion.  *Gilmore* Dkt. No.

22 at ¶¶ 2–4, 37–55, 78, 85–86, 88, 91. The DCFA claim asserts that benefit in purchasing

Roundup was less than bargained for "due to its potential carcinogenicity"; the implied warranty

claim is that Roundup is unfit for "safely killing weeds … due to possible risk of cancer."  *Id.* at

¶¶ 161, 168.  The "price premium" theory now advanced is that Roundup prices would have been

lower but for the alleged omission.  Dkt. 25 at 46.  Dr. Sharp, on whom *Gilmore* plaintiffs rely,

analyzed price impact of failing to warn "of Roundup's cancer risk." *Id.* at 13; *see also* Dkt. No.

35, Report at ¶ 12 (price impact had Monsanto disclosed that Roundup "had the potential to cause

cancer").  Whether Roundup can cause cancer is at issue in *Gilmore* just as in other MDL cases.

The JPML correctly rejected Movants' arguments, militating against suggestion of remand.  *See*

*Arora v. Midland Credit Mgmt., Inc.*, 2017 WL 3263110, at *2 (S.D. Cal. Aug. 1, 2017) (given

JPML view that other claims do not undermine efficiency, it "would be highly unlikely to find

good cause to accept" suggestion of remand even were court inclined to provide it).

Proposed settlement also is not reason for remand.  First, settlement itself is a pre-trial

proceeding within the purview of Section 1407.  *In re Patenaude*, 210 F.3d 135, 144 (3d Cir.

2000); *see also In re Maxim Integrated Prods.,* 2015 WL 1757779, at *4 (W.D. Pa. Apr. 17, 2015)

("[T]he test is not whether proceedings on issues common to all cases have concluded; it is whether

the issues overlap … Even commonality with respect to settlement negotiations can be sufficient")

(internal quotations and citation omitted).  Second, Movants only presuppose that settlement

approval will be granted.  Third, this Court is most familiar with Roundup litigation.  Fourth, the settlement does affect plaintiffs in the MDL.

### 2.     Movants' "case-specific" argument is meritless.

Movants represent that "the only issue currently being litigated (and likely the only issue ever to be litigated) in this action" is "whether the proposed nationwide settlement … is fair, reasonable, and adequate," urging that this is "case-specific" (Mot. at 13) and dependent on "the alleged product overcharges" in *Gilmore,* "not otherwise being litigated in this MDL."  Mot. at 7. Whether a class should be certified and preliminary approval granted, however, entails more than amount of settlement alone, and even that does not depend solely on the overcharges Gilmore asserts.[20]  Analysis begins with application of correct standards, with which this Court is familiar and which have been addressed in the MDL.  *See* MDL Dkt. No. 11182 at 2 (suggestion that "it would be no big deal" to wait until final approval before fully considering objections to settlement agreement is "wrong"); Standing Order For Civil Cases No. 56 (scrutiny must "be as rigorous at the preliminary approval stage as at the final approval stage").[21]  Analysis also includes case strengths and weaknesses. Among other things, *Gilmore* counsel raises preemption (*Gilmore* Dkt. 25 at 39), which has been litigated in the MDL.  *In re Roundup Prods. Liab. Litig*., 364 F. Supp. 3d 1085, 1087 (N.D. Cal. 2019).  Adequacy of representation also is considered under Rules 23(a) and 23(e)(2)(A).  Such matters also have arisen in the MDL.  *E.g*., MDL Dkt. No.12673 at 10, 17– 18 (describing *Ramirez* as a "friendly suit" and urging that representatives were inadequate based on service awards despite doing little to benefit the class).  Finally, disregard for common issues

---

[20] Among other issues of concern are the fact that the current "price premium" theory is discounted from prior refund theory, and noteworthy absence of even request for punitive damages, which "greatly diminish[es] the … settlement value" of the claims.  MDL Dkt. No. 13115 at 4.

[21] *Gilmore* counsel urged an incorrect standard, contending that preliminary approval should be granted unless settlement "is obviously deficient."  *Gilmore* Dkt. No. 25 at 26.

11

to coordinate presupposes that settlement will be approved. *Gilmore* Dkt. No. 65 at 2. There are many reasons this settlement should be denied, including strong indicia of reverse auction and inadequate representation which, contrary to representation (Mot. at 8, n.1) are well supported.[22]

Movants' "case-specific" argument is otherwise meritless. Suggestion of remand is "[t]he transferee judge's notice of … indication that he perceives his role under Section 1407 to have

---

[22]   These include, without limitation: **(1)** Counsel with failed cases behind them and a weak Delaware claim pending. *See Figueroa v. Sharper Image Corp.*, 517 F. Supp. 2d 1292, 1322 (S.D. Fla. 2007) (denying preliminary approval; plaintiffs' counsel "negotiated from a position of weakness"); *Reynolds v. Beneficial Nat. Bank*, 288 F.3d 277, 284 (7th Cir. 2002) (finding lawyer's pre-negotiation efforts "singularly feeble" as illustrated by voluntary dismissal); **(2)** A pending certified class action in Missouri where Monsanto faces "substantial exposure." *See Reynolds*, 288 F.3d at 283 (reversing nationwide settlement approval when defendant faced other litigation in which a "class had been certified[,] the case was proceeding … [and] had been set for trial."); *accord Martin v. Cargill, Inc.*, 295 F.R.D. 380, 388 (D. Minn. 2013); **(3)** Abandonment of a case in Oregon (where Gilmore did purchase Roundup) and re-filing in Delaware (where he did not). *See Martin*, 295 F.R.D. at 388 (voluntary dismissal for purposes such as "forum shopping or to obtain more favorable settlement terms" is an abusive practice that should make judges "wary … as they review proposed settlements"); **(4)** Failure to inform the JPML of tag-along actions. *See* 4 Newberg on Class Actions § 13:60 (5th ed.) ("failure to consolidate parallel litigation where consolidation was possible" is a fact that "may indicate that the defendant sought to create the conditions enabling a reverse auction"); *accord Martin*, 295 F.R.D. at 388-89; **(5)** Failure to inform *Tomlinson* plaintiffs and Missouri courts of settlement in Delaware.  *See Martin,* 295 F.R.D. at 387–88 (defendant failed to timely inform plaintiffs, their counsel, and court in separate case that settlement discussions "had reached fruition[,]" leaving "firm impression that the lack of communication was undertaken for strategic purposes and should not be rewarded"); *Borup v. CJS Sols. Group, LLC*, 2019 WL 2137369, at *1 (D. Minn. May 16, 2019) (low settlement value, high attorneys' fees, and steps to "cabin off" litigations were "at least indicative evidence of a reverse auction"); **(6)** Quick settlement without discovery.  *See* 4 Newberg on Class Actions 13:60 (red flags include quick settlement "of the least well-developed case"); **(7)** No indication that potential liability to consumers other than those represented by *Gilmore* and associated counsel was considered, much less vigorously advocated. *E.g.*, *Gilmore* Dkt. No. 27 at ¶¶ 4, 8 (describing goal of settling *Gilmore* action and counsels' "class actions against Monsanto and retailers"; counsel advocated for their "clients"); *In re Cmty. Bank of N. Virginia*, 418 F.3d 277, 307-08 (3d Cir. 2005) ("questionable whether class counsel could have negotiated in [absent members'] best interests" without "adequate exploration" of other potential claims); **(8)** A "clear-sailing provision," "disproportionate distribution of the settlement" between attorneys and class members, and benefit to Monsanto rather than class members if requested fees are found unreasonable. *Briseno v. Henderson*, 998 F.3d 1014, 1026-27 (9th Cir. 2021); **(9)** Service awards "seemingly untethered from service to the class." *Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1049 (9th Cir. 2019).

ended." *In re Air Crash Near Nantucket Island, Massachusetts*, 162 F. Supp. 2d 694, 695–96 (U.S. Jud. Pan. Mult. Lit. 2001) (citation omitted).  The MDL has not ended.  The Court has already established "separate tracks" (Mot. at 14, 18) for constituent cases according to governing state law.  MDL Dkt. No. 4132.[23]  If another track is needed, that is no reason for remand.  *See* MDL Dkt. No. 12871 (JPML order rejecting reconsideration of transfer and argument that action would likely need "its own litigation track").  Argument about voluntary cooperation (Mot. at 18) was already presented to and rejected by the Panel.  *See* JPML Dkt. No. 2438 at 14.

### 3.  Efficiency is served by transfer.

Contrary to suggestion (Mot. at 12), the JPML essentially did find an end run around this Court, expressing in no uncertain terms that Monsanto should have notified it of potential tag-along actions.[24] As it also found, *this Court* is most familiar "with the parties, the issues presented by the Roundup litigation, and past attempts to resolve various aspects of the litigation through settlement."  *Gilmore* Dkt. No. 65 at 3. Whether or not the settlement deals with "product overcharges" does not make this less true. The Delaware Court has no experience with the litigation at all.  *Id*.  Accrual of judicial expertise is "often the determinative factor in deciding whether to remand prior to the completion of pretrial proceedings." *In re Maxim Integrated Prods*., 2015 WL 1757779 at *5 (internal quotations and citation omitted); *see also In re EpiPen*, 2019 WL 294803, at *4 (continued consolidation "will secure a shared efficiency" of one court

---

[23]  Without concession that Delaware law can apply to a nationwide class in the *Gilmore* action, *Tomlinson* plaintiffs note that cases transferred from Delaware are in Group 5 where discovery does not close until 2022 and summary judgment is not due until 2023.  MDL Dkt. 13819.

[24]  Movants' observations on *Tomlinson* collusion arguments are disingenuous.  Mot. at 16 n. 4. Failure to notify the JPML of tag-along actions (a badge of reverse auction) is hardly "unsupported." *Gilmore* Dkt. No. 65 at 3.  *Tomlinson* plaintiffs also urged that the carve-out of *Gilmore* and related actions after the *Ramirez* settlement was *first* rejected suggests that Monsanto and *Gilmore* counsel were already in negotiations.  Dkt. No. 41-1 at 33–34.  The *Gilmore* settlement does not release punitive damages because Gilmore *did not request* them.

evaluating overlapping issues); *Hildes*, 2014 WL 1571330 at *2 (remand would "require another court to make its own way up this same learning curve"); *In re WellPoint*, 2014 WL 12588474 at *2–3 (declining suggestion of remand because efficiency is served by familiarity with the case).

Movants' complaint about adjusting the preliminary approval motion for Ninth Circuit law (*see* Mot. at 7, 13) is meritless. Transfer is appropriate "even if some parties … might experience inconvenience or delay." *Gilmore* Dkt. No. 65 at 3. Moreover, had Monsanto complied with its duty to notify the JPML of this action, transfer would have earlier occurred and there would be no need for revised briefing. Movants suggest that MDL plaintiffs can "object to or opt out of the proposed settlement" in Delaware. Mot. at 13, n.5. Movants of course sought *to prevent Tomlinson* plaintiffs from objecting. It is unclear how many plaintiffs *in this MDL* were aware of the Delaware motion or if so, appreciated its significance. Perhaps Movants are fearful of more opposition now that there has been a transfer.[25] In any case, none of this is reason for remand.

### 4. The proposed settlement affects cases in the MDL.

While only one part of the JPML's reasoning, the proposed settlement *does* impact cases in the MDL. One need only "have bought the product" to be a class member. Mot. at 14. Concededly, there are MDL plaintiffs meeting that criteria. *Id*.; JPML Dkt. No. 2437 at 4-5; JMPL Dkt. No. 2438 at 10. Movants say the settlement carves out personal injury/medical monitoring claims (Mot. at 8, 13, 14–16) but clearly, it releases tort, warranty, and consumer act claims, all of which are asserted in the MDL. And there are plaintiffs in the MDL asserting more than physical injury. *E.g.*, *Bertelson v. Monsanto Co.*, No. 3:21-cv-05616-VC Dkt. No. 1 at ¶ 236 ("Plaintiff

---

[25] In *In re: Ocwen Loan Servicing, LLC, Fair Debt Collection Practices Act (FDCPA) Litig.*, 988 F. Supp. 2d 1367 (U.S. Jud. Pan. Mult. Lit. 2013), cited by Movants, the JPML was considering whether to grant transfer, and another court already had granted preliminary approval of a class settlement. In *In Re: Toyota Motor Corp. Prius HID Headlamp Prods. Liab. Litig.*, 754 F. Supp. 2d 1380, 1381 (U.S. Jud. Pan. Mult. Lit. 2010), movants failed to convince the JPML that there were sufficient shared questions of fact, which the JPML has here found to exist.

was injured in that he paid substantial sums for the Roundup® … that Plaintiff would not have paid had Defendant not engaged in unfair and deceptive conduct"); *Lyshoj v. Monsanto Co.*, No. 3:21-cv-07123-VC, Dkt. No. 1 at ¶ 236 (same); *Weinmann v. Monsanto Co.*, No. 3:21-cv-01328-VC, Dkt. No. 1 at ¶ 236 (same).[26]  The settlement would foreclose *all* purchasers of covered Roundup Products from seeking damages *for all* their harm.

Moreover, and despite representation that Movants are not seeking to stay personal injury claims (Mot. at 14 & n.3), they seek to enjoin all settlement *class members* from pursuing, participating in, or benefitting from any other action or proceeding relating to Released Claims "or the facts and circumstances relating thereto." *Gilmore* Dkt. No. 24-1 at ¶ 17 (b). All claims relate to the same "facts and circumstances" regardless of injury asserted.  Injunction would certainly cover all persons asserting economic injury.  That *Gilmore* counsel's own "related cases" (*Weeks*, *Ezcurra*) have already been stayed by consent (Mot. at 14, n. 3; *supra* n. 18) is beside the point.

<u>**CONCLUSION**</u>

The JPML has considered, and rejected, Movants' arguments. For reasons addressed, suggestion of remand should be denied.

---

[26] *See also*, *e.g.*, *Haren v. Monsanto Co.*, No. 3:20-cv-01585-VC, Dkt. No. 1 at ¶ 201 (as a result of consumer act violations, "Plaintiff developed NHL and *was otherwise* injured") (emphasis added); *Perkov v. Monsanto Co.,* No. 3:20-cv-00920-VC, Dkt. No. 1 at ¶ 201 (same); *Perez, et al. v. Monsanto Co.*, No. 3:19-cv-06808, Dkt. No. 1 at ¶ 205 ("Plaintiff has suffered significant and permanent damages, including *but not limited to* physical injury") (emphasis added).

Dated: December 14, 2021

Respectfully submitted,

**STUEVE SIEGEL HANSON LLP**

/s/ *Patrick J. Stueve*
Patrick J. Stueve, Mo. Bar #37682
Todd E. Hilton, Mo. Bar #51388
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
Telephone: (816) 714-7100
stueve@stuevesiegel.com
hilton@stuevesiegel.com

**GRAY, RITTER & GRAHAM, P.C.**
Don M. Downing, Mo. Bar #30405
Gretchen Garrison, Mo. Bar #33963
Cort A. VanOstran, Mo. Bar #67276
701 Market Street, Suite 800
St. Louis, Missouri 63101
Telephone: (314) 241-5620
ddowning@grgpc.com
ggarrison@grgpc.com
cvanostran@grgpc.com

*Attorneys for Intervenors*
*Ryan Tomlinson and Carol Richardson*