# EXHIBIT A

Patrick J. Stueve, #37682 MO
Todd E. Hilton, #51388 MO
**STUEVE SIEGEL HANSON LLP**
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
Telephone: (816) 714-7100
hilton@stuevesiegel.com
stueve@stuevesiegel.com

Don M. Downing, #30405 MO
Gretchen Garrison, #33963 MO
Cort A. VanOstran, #67276 MO
**GRAY, RITTER & GRAHAM, P.C.**
701 Market Street, Suite 800
St. Louis, Missouri 63101
Telephone: (314) 241-5620
ddowning@grgpc.com
ggarrison@grgpc.com
cvanostran@grgpc.com

*Counsel for Proposed Intervenors*
*Ryan Tomlinson and Carol Richardson*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | MDL No. 2741<br><br>Case No. 16-md-02741-VC |
| This document related to:<br><br>*Gilmore v. Monsanto*, Case No. 21-cv-08159 | **REQUESTS FOR PRODUCTION OF DOCUMENTS**<br><br>Date/Time: March 3, 2022, 2:00 p.m.<br>Via Zoom Webinar<br>Hon. Vince G. Chhabria |

## REQUEST FOR PRODUCTION OF DOCUMENTS

Pursuant to the Federal Rules of Civil Procedure, Proposed Intervenors submit the following Requests for Production of Documents and request that Plaintiffs and Defendant produce the Documents described herein within 30 days.

## INSTRUCTIONS

1.     Where Plaintiffs and/or Defendant assert a claim of privilege (*e.g.*, attorney-client privilege or attorney work-product protection) in objecting to any request or part thereof and withholds information based on such assertion, the following instructions apply:

   a.     Plaintiffs and/or Defendant shall in the objection to the request or part thereof identify with specificity the nature of the privilege or protection that is being asserted;

   b.     Plaintiffs and/or Defendant shall in the objection to the request or part thereof provide the following information, unless disclosure of such information would cause disclosure of the allegedly privileged or protected information:

   i.     the type of document or communication;

   ii.     the general subject matter of the document or communication;

   iii.     for communications, the name(s) of the person(s) making the communication and the name(s) of the person(s) receiving the communication;

   iv.     the date when the document or communication was made;

   v.     the place where the document or communication was made; and

   vi.     such other information sufficient to identify the document or communication, including, where appropriate, the author,

addressee, custodian, and any other recipient of the document or communication, and where not apparent, the relationship of the author, addressee, custodian, and any other recipient to each other.

2.      If any of the documents requested below have been destroyed or otherwise discarded, identify each destroyed or discarded document and state:

a.      the date of destruction or other disposition;

b.      the reason for destruction or other disposition; and

c.      the name, current address, occupation, and employer of the person who destroyed or disposed of the document.

3.      In Exhibit A, Proposed Intervenors have specified the manner in which they would prefer responsive ESI (*see* Definitions below) and paper documents converted to electronic format to be produced. If production in the manner specified would be unduly burdensome or impossible, please let us know.

## DEFINITIONS

1.      "All" should be construed to include the collective as well as the singular and shall mean "each," "any," and "every."

2.      Claim for Relief has the same meaning as under the proposed Settlement Agreement, Gilmore Dkt. No.59-1 §A (9).

3.      Class Counsel has the same meaning as under the proposed Settlement Agreement, *Gilmore* Dkt. No. 59-1 §A (16).

4.      "Communication" means any oral, written, or electronic utterance, notation, or statement of any nature whatsoever, draft or final, potential or actual, by and to whomever made or attempted to be made, including, but not limited to, correspondence, memoranda, conversations, dialogues, discussions, meetings, interviews, consultations, agreements, electronic messages (including email, text messages, instant messages, and company intranet, electronic

bulletin board or Internet site posting), video or audio recordings, and other understandings between two or more persons.

**5.**     "Concerning" or "regarding" means any Document or Communication which explicitly or implicitly, in whole or in part, comprises, was received in conjunction with, or was generated as a result of the subject matter of the request, including all Documents and Communications which reflect, refer, record, are in regard to, in connection with, specify, memorialize, relate, describe, discuss, consider, constitute, embody, evaluate, analyze, refer to, review, report on, comment on, impinge upon, or impact the subject matter of the request.

**6.**     "Document" includes, but is not limited to, all handwritten, typed, printed, punched, coded, tape recorded, photographed, or otherwise reproduced, printed, recorded or graphic statements, physical objects, communications or other matter, including all drafts, correspondence, emails, text messages, instant electronic messages, computer records, disk files, letters, telegrams, telexes, memoranda, notes, sound recordings, legal instruments, declarations, filings, plans, diagrams, pictures, circulars, announcements, manuals, brochures, publications, statistical records, desk calendars, appointment books, diaries, computer printouts, data processing program libraries, data processing input and output, computer memories, microfilm, accounts, journals, ledgers, bills, invoices, purchase orders, checks, receipts and the like, and each and every copy, duplicate draft, reproduction, prior draft, excerpt, note and summary of, or prepared from, any of the foregoing which is not identical to the original due to corrections, alterations, notations, initials, deletions, marginal markings, underscoring, conformation or indication of routing, known to you and each and every such document which can be located or discovered by reasonable diligent efforts. "Document" includes Electronically Stored Information.

**7.**     "Electronically Stored Information" or "ESI" means information that is stored in electronic media, regardless of the media or whether it is in the original format in which it was created, and that is retrievable in perceivable form and includes, without limitation, metadata, system data, deleted data, and fragmented data.

8.      "*Gilmore* action" or "*Gilmore*" means *Gilmore v. Monsanto Company*, Case No. 1:20-cv-1085-MN (D.Del) now Case No. 3:21-cv-8159-VC (N.D. Cal.).

9.      "Identify" with respect to natural persons means to state the person's name, address, business telephone number (or home number if no business number is available), employer, and job title.

10.     "Identify" with respect to an entity means to state the entity's name and present or last known address.

11.     "Person" or "Persons" means any natural person acting in any capacity and/or any entity or organization, including divisions, departments, and other units therein, and shall include, but not be limited to, a public or private corporation, partnership, association, group, organization, joint venture, committee, proprietorship, trust, estate, any government and/or governmental body, including, but not limited to, any commission, board, bureau and/or agency, and all other forms of business, governmental, or juridical person or other entity.

12.     "Related Actions" has the same meaning as under the proposed Settlement Agreement, *Gilmore* Dkt. No. 59-1 §A (46).

13.     "Roundup Products" has the same meaning as under the proposed Settlement Agreement, *Gilmore* Dkt. No. 59-1 § A (45) & Ex. A.

14.     "Retailer" has the same meaning as under the proposed Settlement Agreement, *Gilmore* Dkt. No. 59-1 § A (50).

15.     Settlement Agreement means the settlement agreement for which preliminary approval has been and/or will be sought in Gilmore v. Monsanto Company, Case No. 1:20-cv-1085-MN (now Case No. 3:21-cv-8159-VC).

## <u>REQUESTS</u>

**REQUEST NO. 1:**  Sales data, including product prices, and number of purchases of Roundup

Products identified in the Settlement Agreement for class periods as defined therein under each

state law (*see Gilmore* Dkt. No. 59-1 § A(20) & Ex. B), provided by Monsanto in connection with

settlement in the *Gilmore* action.

**RESPONSE:**


**REQUEST NO. 2:**  The unredacted report of D.C. Sharp dated July 31, 2020. *Gilmore* Dkt. No.

35, Report.

**RESPONSE:**


**REQUEST NO. 3:**  Damages estimates for a nationwide class prepared by or at the direction of

Class Counsel: (1) prior to February 16, 2021; and (2) on or after February 16, 2021

**RESPONSE:**


**REQUEST NO. 4:**  Written discovery and responses (including requests for admission), and the

transcript of any deposition of a Monsanto representative taken, in each "Related Action"

identified in the Settlement Agreement.

**RESPONSE:**

**REQUEST NO. 5:**   Documents evidencing agreements or understandings (oral or written) with any Retailer of Roundup Products in connection with settlement in *Gilmore*.

**RESPONSE:**

**REQUEST NO. 6:**   Documents evidencing agreements or understandings (oral or written) with any plaintiff in a "Related Action" under which he / she has or will receive a benefit in connection with settlement in *Gilmore* other a Claim for Relief made under Section I of the proposed Settlement Agreement.

**RESPONSE:**

**REQUEST NO. 7:** Documents evidencing agreements or understandings (oral or written) with and/or between Class Counsel and any other plaintiffs' counsel for the sharing and/or allocation of attorneys' fees or expenses awarded in *Gilmore*.

**RESPONSE:**

**REQUEST NO. 8:**   Documents describing work performed (including dates, task, and hours expended) of each attorney or firm in "Related Actions" that will share in any attorneys' fees awarded in *Gilmore*.

**RESPONSE:**

**REQUEST NO. 9:**   Documents (including emails, term sheets, memoranda of understanding) evidencing communications between counsel for Monsanto and counsel for Mr. Gilmore or other named plaintiffs in *Gilmore* pertaining to settlement in the *Gilmore* action and in particular: (1) when settlement discussions began; (2) filing suit in Delaware; (3) assertion or non-assertion of punitive damages in Delaware; (4) consideration of claims available in states other than California, Florida, and Arkansas; (5) the naming of additional plaintiffs in *Gilmore*; (6) service awards or other benefits to plaintiffs in "Related Actions"; and (7) attorneys' fees.

**RESPONSE:**

Respectfully submitted,

**STUEVE SIEGEL HANSON LLP**

/s/ *Patrick J. Stueve*
Patrick J. Stueve, Mo. Bar #37682
Todd E. Hilton, Mo. Bar #51388
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
Telephone: (816) 714-7100
stueve@stuevesiegel.com
hilton@stuevesiegel.com

and

**GRAY, RITTER & GRAHAM, P.C.**
Don M. Downing, #30405 MO
Gretchen Garrison, #33963 MO
Cort A. VanOstran, #67276 MO
701 Market Street, Suite 800
St. Louis, Missouri 63101
Telephone: (314) 241-5620
Facsimile: (314) 241-4140
ddowning@grgpc.com
ggarrison@grgpc.com
cvanostran@grgpc.com

Exhibit A

**FORMAT FOR THE PRODUCTION OF ESI AND PAPER DOCUMENTS**

**CONVERTED TO ELECTRONIC FORMAT**

**I.**     Production of Paper Documents and ESI Produced as Static TIFF Images.

a.     TIFFs.  Paper documents and ESI not specified in Section II. below should be scanned and produced as single-page, black and white, group IV 1-bit TIFFs imaged at 300 dpi. Bates numbers, confidentiality designations and redactions (to the extent they are necessary) should be burned into the image.  TIFF image files should be provided in an "Images" folder.

b.     Unitizing Documents.  In scanning paper documents, distinct documents should not be merged into a single record, and single documents should not be split into multiple records (i.e., paper documents should be logically unitized).

c.     Unique IDs.  Each TIFF image should have a unique filename, which corresponds to the Bates number of that page.  The filename should not contain any blank spaces and should be zero-padded (e.g., ABC-000001), taking into consideration the total estimated number of pages to be produced.  Bates numbers will be unique across the entire production and prefixes will be consistent across all documents a Party produces in the action.

**II.**     Production of Documents in Native Format.

a.     Native Format. The processed native for all spreadsheets (e.g., MS Excel, CSV, or similar), presentation files (e.g., PowerPoint), chat data maintained in native format and electronic information containing audio or video components should be produced and linked to the database by the metadata field "Native File."

b.     Additional Native Format Types. The Requesting Party may ask for certain other documents and/or databases initially produced in TIFF format to be produced in their Native Format if the TIFF format is not reasonably usable. Requesting Party shall identify the

documents by their Bates numbers and the documents should be produced in their unaltered Native Format.

c.   Bates Numbering and Placeholders. Where native files are produced in lieu of TIFF images, each native file will be assigned a unique Bates number.  The Producing Party will produce a placeholder (a single-page TIFF slip sheet indicating that the native item was produced) along with the file itself in Native Format.  The placeholder will be branded with the production number in the lower right-hand corner and the phrase or substantially similar phrase "PRODUCED IN NATIVE ONLY" branded in the center of the page.  The Producing Party will also brand any confidentiality or similar endorsements in the lower left-hand corner of the placeholder.

d.   Redactions. To the extent that a native spreadsheet must be redacted, the Producing Party may redact either a copy of the native file or produce TIFF images with burned in redactions in lieu of a Native File and TIFF placeholder image.  If redacting TIFF images and to the extent that any of the following can be automated, the Producing Party, or its e-discovery vendor, should make reasonable efforts to: (i) reveal hidden rows, columns or sheets prior to converting the document to TIFF; (ii) clear any filters that may conceal information; (iii) adjust column widths so that numbers do not appear as "########"; (iv) ensure that column and row headings print; (v) ensure that the tab name appears in the header or footer of the document; (vi) process comments so that they are produced at the end of the spreadsheet; and (vii) process spreadsheets so that they print across then down.

e.   Request for Native Files.  Other than as specifically set forth above, a Producing Party need not produce documents in Native Format.  If good cause exists for the Requesting Party to request production of certain documents in Native Format, the Requesting Party may

request production in Native Format by providing (i) a list of the Bates numbers of documents it requests to be produced in Native Format; and (ii) an explanation of the need for reviewing such documents in Native Format. The Producing Party shall not unreasonably deny such requests. The Producing Party shall produce an overlay to ensure that the "Native File" entry in the data load file indicates the relative file path to each Native File in such production, and all Extracted Text and applicable metadata fields.

**III.** Data Load Files. Documents should be provided with an Opticon Cross-Reference File (.OPT file) and Concordance data load file (.DAT file) using standard Concordance delimiters:

1. Field Separator: ASCII character 20 ("¶");

2. Quote: ASCII character 254 ("þ"); and

3. New Line: ASCII character 174 ("®").

Concordance-compatible image and data load files should be provided in a "Data" folder.

**IV.** Extracted Text and OCR

a. OCR. For paper documents scanned to TIFF images, the full text OCR shall be provided on a document-level in an appropriately formatted text file (.txt) that is named to match the first Bates number of the document. Text files should be provided in a "Text" folder. To the extent that a document is redacted, the text files should not contain the text of the redacted portions.

b. Extracted Text Files. For native documents scanned and produced as static TIFF images, the full text of native files should be extracted directly from the native file (not OCR) and should be delivered in an appropriately formatted text file (.txt) that is named to match the

first Bates number of the document. Text files should be provided in a "Text" folder.  To the extent that a document is redacted, the document should undergo OCR after the text has been redacted in order to remove the redacted text.

**V.** Parent-Child Relationships.  The child-document should be consecutively produced immediately after the parent-document.  Each document shall be produced with the production number for the first and last page of that document in the "Bates Beg" and "Bates End" fields of the data load file and with the "Bates Beg Attach" and "Bates End Attach" fields listing the production number for the first and last page in the document family.  If an attachment is withheld on the basis of privilege, the Producing Party will produce a placeholder (a single-page TIFF slip sheet) indicating that the attachment was withheld on the basis of attorney/client, work product doctrine, or any recognized privilege. The "Attach Range" or "Family Group" field will contain the production numbers for the first and last pages in the document family (Example: PROD00000001-PROD000000322).

**VI.** Metadata.  Metadata will be produced for all ESI, whether produced in Native Format or Static Image formats.

**VII.** Color.  Documents containing color need not be produced in color in the first instance, provided however, that the Producing Party shall retain a copy of produced hard copy documents in color.  If good cause exists for the Requesting Party to request production of certain documents in color, the Requesting Party may request production of such documents in color by providing (i) a list of the Bates numbers of documents it requests to be produced in color format; and (ii) an explanation of the need for production in color format.

**VIII.** Deduplication.  A Producing Party shall globally deduplicate by exact duplicate families provided that (i) only exact (bit-by-bit) duplicates are subject to deduplication; (ii) the

Producing Party identifies all additional custodians in the "All Custodians" metadata field; and (iii) an Email that includes content in the BCC or other blind copy fields shall not be treated as a duplicate of an Email that does not include content in the BCC or other blind copy field, even if all remaining content in the email is identical. If processing is done on a rolling basis, an updated "All Custodians" field with additional values shall be provided in an overlay. Parties should deduplicate responsive ESI across custodians by the use of MD5 or SHA-1 hash values at the parent level.

**IX.**     Date Format:

    a.     All metadata pertaining to dates and times will be standardized to Pacific Time (PT).