GILLIAN L. WADE (State Bar No. 229124)
SARA D. AVILA (State Bar No. 263213)
MARC A. CASTANEDA (State Bar No. 299001)
Milstein, Jackson Fairchild & Wade, LLP
gwade@mjfwlaw.com
savila@mjfwlaw.com
mcastaneda@mjfwlaw.com
10990 Wilshire Blvd., 8th Floor
Los Angeles, CA 90024
Tel: (310) 396-9600
Fax: (310) 396-9635

JOEL OSTER
Law Offices of Howard Rubinstein
joel@joelosterlaw.com
22052 W. 66th St. #192
Shawnee, Kansas 66226

*Attorneys for Plaintiffs and the Proposed Settlement Class*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SCOTT GILMORE, et al., <br><br> Plaintiffs, <br><br> vs. <br><br> MONSANTO COMPANY, <br><br> Defendant. | MDL No. 2741 <br><br> Case No. 3:21-cv-08159 <br><br> **PLAINTIFFS' RESPONSE TO OBJECTION AND REPLY IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND CERTIFICATION OF CLASS FOR PURPOSES OF SETTLEMENT** <br><br> Date: Jan. 12, 2023 <br> Time: 2:30 p.m. <br> Place: Via Zoom Webinar <br> Judge: Hon. Vince G. Chhabria |

**INTRODUCTION**

Hardly their first foray in this case, Objectors Tomlinson and Richardson ("Objectors") are represented by a group of Missouri attorneys who have repeatedly sought to upend this settlement. Having sought unsuccessfully to both intervene and stop preliminary approval, Objectors are back, recycling the same innuendo-based arguments this Court has already rejected.

But nothing has occurred since their last failed volley. Notice was successful, with many inquiries and settlement website visits. Dkt. No. 129-1 ("Schwartz Decl.") at ¶¶ 16-22. Class Members submitted between $12.7 and $14.2 million in claims (with a robust average payment of more than $56 per Class Member) *Id*. ¶¶ 32, 34. Defendants' total cash consideration will fall well within the floor/ceiling structure this Court previously found reasonable. Dkt. No. 121 ("PA Order") at ¶ 4. Only seven class members opted out, and only one objection was submitted (by Tomlinson and Richardson, jointly). Schwartz Decl. at ¶¶ 39, 40; Dkt. Nos. 131, 132.

Objectors' reasoning—a scattershot collection of interspersed arguments—fails on multiple fronts. First, Objectors' 'apples to oranges' comparison between this nationwide settlement and a hypothetical Missouri-only outcome is irrelevant (and otherwise unavailing) when assessing the settlement's Rule 23 fairness. Second, there is no evidence of collusion (or inadequate representation), and the Court has already applied the heightened *Bluetooth* scrutiny proposed by Objectors. Finally, Objectors' 'Missouri carve-out' proposal is entirely misguided.

**ARGUMENT**

I. **THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE**

   A. **Objectors' Analysis of the First Three *Churchill* Factors is Deeply Flawed**

Despite Objectors' arguments to the contrary, the first three *Churchill* factors—(1) the strength of the plaintiff's case, (2) the risk, expense, complexity, and likely duration of further litigation, and (3) the risk of maintaining class action status throughout the trial—weigh strongly in favor of final approval. As this Court found, "[t]he settlement amount and compensation rates appear to be adequate given the many risks inherent in this litigation[.]" MPA Order ¶ 4. Objectors themselves do not dispute this. *See* Dkt. No. 134 ("Obj. MFA Opp.") at 7-8 (discussing litigation

1

risks around causation, damages, and class certification).[1] Rather, they rehash their previous contention that Plaintiffs' litigation risk far outweighs their own, which in turn "require[s] the Court to deny final approval." *Id.* at 12. Objectors' comparison between Plaintiffs' and Tomlinson's litigation risks is not only irrelevant but grossly miscalculated.

As a threshold matter, the aim of *Churchill*'s 'risk factor' inquiry is not to determine 'whose case is riskier,' tipping the scales for or against approval. Rather, it is "to assess **the plaintiff's**" (and by extension the **Settlement Class'**) 'likelihood of success on the merits and the range of possible recovery versus the risks of continued litigation and maintaining class action status through…trial.'" *Moreno v. Cap. Bldg. Maint. & Cleaning Servs., Inc.*, 2021 WL 1788447, at *5 (N.D. Cal. May 5, 2021) (emphasis added). In so doing, it may make sense to examine how a similar class action has fared—past results *may* provide insight on the *plaintiff's* likelihood of future success. But the goal is not, as Objectors claim, to determine whether the other case has class members in an "advantageous position" which if true "requires denying final approval." Obj. MFA Opp. at 12. *Kim* and *Smith*, the only two cases cited by Objectors in support of this non-existent bright line test, say absolutely nothing of the sort.[2]

---

[1] Further, Objectors do not contest that the last four *Churchill* factors—(5) the extent of discovery and state of the proceedings, (6) the experience and views of counsel, (7) the presence of a governmental participant, and (8) the reaction of the class members—support final approval.

[2] Final approval in *Kim* was *not* overturned because an 'advantageous' case existed, but because (among *many* other reasons)—in undervaluing the settling class claims, the district court relied heavily on the risk of a dispositive legal issue *that had already been foreclosed by a state appellate court ruling* in the other case. *Id.*

In the non-Ninth Circuit *Smith* case, a defendant facing multiple state class actions announced a national settlement in a case pending in Illinois federal court. *Smith v. Sprint Communications Co., L.P.*, 387 F.3d 612, 613 (7th Cir. 2004). The case involved extreme variations in state laws, such as "differences in state law concerning the scope of the railroads' easements, along with differences in the various deeds themselves, [which] would result in a nightmare of a class action." *Id.* (quotations omitted). Further, the would-be settling parties fled that jurisdiction (where preliminary approval was being considered) after several intervenors appeared "because the court seemed to be disinclined to approve the settlement[.]" *Id.* at 613. The parties then attempted "judge shopping" in an alternate court. *Id.* The court, citing *all* these circumstances, found the settlement denied intervenors "structural assurance of fair and adequate representation" especially where they were on the eve of trial and had already prevailed on liability. *Id.* at 614. This is hardly the case

Further, even if a 'litigation risk comparison' might be probative in some instances, it is certainly not so in this case. This is not a case of two competing class actions seeking relief on behalf of the same universe of class members. Rather, purchasers in Missouri represent a miniscule fraction of Settlement Class Members.[3] A true 'apples to oranges' comparison would at least account for the 100% risk that the purportedly superior *Tomlinson* case provides no relief to Class Members in 49 states. Sometimes, global resolution requires complex (and riskier) litigation, which is precisely how Plaintiffs achieved the settlement here.

Objectors' analysis regarding the first three *Churchill* factors is fundamentally flawed, ignores precedent, and invokes two completely inapposite authorities. As explained below, they further overstate the relative strength of their case while understating the risk.[4]

### B.  Objectors Vastly Overstate the Relative Strength of their Case

Even assuming, *arguendo*, that Objectors' 'apples to oranges' comparison is probative (it is not), Objectors exaggerate the relative strength of their case.[5] *See* Obj. MFA Opp. at 8-12. As explained above, the Missouri case was a manifestly weaker case on behalf of the Settlement Class, since it could not have achieved any relief on behalf of Class Members in 49 states. But even analyzing their case in a vacuum, Objectors vastly overstate the Missouri case's prospects.

---

here, as national settlement classes for consumer product cases are widely approved, and there is no evidence of malfeasance on the part of the parties.

[3] The differences do not stop at geographical reach. Objectors have asserted claims not just based on consumer products (those at issue in this litigation and pertinent to the Settlement), but also agricultural and industrial products (which are not affected by this Settlement). Dkt. No. 94-3.

[4] Keeping with the addled organization briefing theme, Objectors end their discussion on litigation risk by suggesting varying degrees of risk / success also goes to Rule 23(e) adequacy. Obj. MFA Opp. at 13. This is discussed *infra*, § I(E)(1).

[5] For further argument, Plaintiffs respectfully refer the Court to other issues raised by Monsanto, which is a party in the Missouri case and more attune to its procedural wrangling. *See* Dkt. No. 109 at 7-9 ("Objectors never took any depositions—they never even *noticed* any depositions," never produced an expert report, "served exactly one set of requests for production and one set of interrogatories in the nearly 18 months after they filed *Tomlinson*," and "pursu[ed] an overbroad class that included agricultural and professional purchasers even though the MMPA limits recovery to purchases 'primarily for personal, family, or household purposes.'").

3

With respect to causation (Obj. MFA Opp. at 9), Objectors do not dispute that Monsanto has now obtained six defense verdicts in a row in separate personal-injury cases alleging that Roundup® products caused cancer. *See* Dkt. No. 129 ("Pl. MFA") at 24. Objectors however contend that these cases do not indicate any weakness for their MMPA claim because they need not show Roundup caused any class member's cancer. Obj. MFA Opp. at 9. Although specific causation may not be required in Objectors' Missouri case (nor would it be required in Plaintiffs' case), proof that Roundup® is capable of causing cancer generally may be required. For example, in *Nat'l Ass'n of Wheat Growers v. Becerra*, the court enjoined a state-imposed cancer warning on Roundup® products because it was not "factual and uncontroversial." 468 F. Supp. 3d 1247, 1252-53 (E.D. Cal. 2020). Although the *Wheat Growers* case did not implicate any individual's personal injury (rather, it concerned whether the state-imposed cancer warning violated glyphosate manufacturers' First Amendment rights), the unsettled question over whether glyphosate caused cancer generally was central to the court's ruling. *Id.*

Regarding damages (Obj. MFA Opp. at 9-11), Objectors' contention they would be entitled to a full refund is without merit. Measuring damages as the price paid versus value received is the standard under the MMPA, as it is under the DCFA. *Schoenlein v. Routt Homes, Inc.*, 260 S.W.3d 852, 854 (Mo. App. E.D. 2008) (MMPA damages are calculated as "the difference between the actual value of the property and the value if it had been as represented"); *Harnish v. Widener Univ. Sch. of Law*, 833 F.3d 298, 307 (3d Cir. 2016) (same under DCFA). Plaintiffs have never contended benefit of the bargain damages can never equal the full purchase price. But here, there is no dispute Roundup® performs its intended function (namely, killing weeds), and thus has some value that must factor into the damages analysis. Indeed, Plaintiffs' expert found the price premiums associated with the failure to warn is approximately thirty-one percent of the purchase price. Tellingly, Objectors have not produced any expert analysis suggesting a higher price premium could be established. Under Missouri law, full refund damages are available only when the plaintiff "rescinds and returns the property received or whe[n] he received nothing of value." *Kerr v. Vatterott Educ. Ctrs. Inc.*, 439 S.W.3d 802, 814 (Mo. Ct. App. 2014). That Roundup® is

4

potentially carcinogenic does not mean it is valueless, particularly when it works as advertised. *See, e.g., In re Tobacco Cases II*, 240 Cal. App. 4th 779, 802 (2015) (full refund inappropriate for cigarettes deceptively advertised as less dangerous, considering it is "inherently implausible to show a class of smokers received no value from a particular type of cigarette").[6]

Objectors' arguments with respect to Mr. Gilmore's Delaware standing also fall flat. Obj. MFA Opp. at 8. For one, they completely ignore that the Delaware matter was only one of a series of cases brought as part of an overall litigation strategy, and but one of many cases resolved by the Settlement. *See* Pl. MFA at 3-7. Further, Objectors' contention Gilmore lacked standing to pursue his DCFA claim because he purchased Roundup® outside of Delaware is wrong. The DCFA applies to conduct in Delaware, and Plaintiffs clearly allege Monsanto is incorporated and transacts business in Delaware, and that the material omissions giving rise to Plaintiffs' claims arose, at least in part, in Delaware. Dkt. No. 22 at ¶¶ 11, 12, 22, 24, 25, 27.[7]

### C. Objectors Minimize the Preemption Risk and Apply an Improper *Post Hoc* Risk Assessment

Objectors also minimize the risk with respect to preemption, and improperly suggest the 'preemption risk' should be evaluated in terms of post-settlement legal developments. Obj. MFA Opp. at 9, 11-12. Despite the Supreme Court's denial of certiorari in *Hardeman* and developments in the Ninth and Eleventh Circuit on the issue, the risks of continued litigation must be evaluated at the time the settlement was reached. *See Vianu v. AT&T Mobility LLC*, No. 19-cv-03602-LB, 2022 U.S. Dist. LEXIS 203520, at (N.D. Cal. Nov. 8, 2022) (cons risks that existed "[a]t the time

---

[6] *Kerr v. Vatterott Educ. Ctrs., Inc.*, 439 S.W.3d 802 (Mo. Ct. App. 2014) is distinguishable because there, the jury found that the Medical Office Assistant Program ("MOAP") in which the plaintiff had enrolled was "worthless because it did not advance her career objectives." *Id.* at 809. The plaintiff only enrolled in the MOAP because she was promised the credits would apply toward a nursing degree, which they did not. *Id.* at 807, 811. *Scott v. Blue Springs Ford Sales, Inc.*, 215 S.W.3d 145, 182 (Mo. Ct. App. 2006) is distinguishable because it involved the fair market value of a vehicle, which the plaintiff "could not reasonably expect to sell . . . due to its unsafe condition." *Liberty Fin. Mgmt. Corp. v. Beneficial Data Pcsg. Corp.*, 670 S.W.2d 40, 57 (Mo. App. 1984) is completely inapposite because it is not a consumer case, nor does it involve an MMPA claim.

[7] Even if the Court were to have held that Gilmore could not proceed under the DCFA, he could and would have easily amended the complaint to assert claims under Oregon law.

of settlement, [when defendant] was vigorously contesting the case and had filed motions to stay the case and compel arbitration, prompted by the Supreme Court's grant of certiorari in *Viking River Cruises, Inc. v. Moriana*, 142 S. Ct. 1906, 213 L. Ed. 2d 179 (2022)"—which had not yet been decided. Here, preemption posed a tremendous threat to Plaintiffs' claims at the time of settlement, and continues to be unsettled issue in most jurisdictions, including Missouri. The Settlement adequately accounted for these uncertainties, as previously explained to the Court, *see* Dkt. No. 116 at 1 ("[T]he Parties are bound by the terms of the Settlement Agreement regardless of the outcome in *Hardeman*.").

### D. The Amount Offered in Settlement Weighs in Favor of Final Approval

The fourth *Churchill* factor—the amount offered in settlement—also weighs in favor of approval, as Plaintiffs previously explained. Pl. MFA at 29-33. Objectors contend otherwise, but as explained above (and in Plaintiffs' original briefing), they greatly overstate the ability for Class Members to receive both full-refund and punitive damages. Pl. MFA at 31-32. Objectors also improperly characterize the floor / ceiling structure as a 'reverter.' To avoid repetitive argument, Plaintiffs respectfully refer the Court to its previous briefing. *See* Dkt. No. 94 ("Pl. MPA") at 41.

### E. The Other Requirements of Rule 23(e) are Met

Objectors make two arguments with respect to Rule 23(e)'s considerations that "class representatives and class counsel have adequately represented the class" and "the proposal was negotiated at arm's length[.]" Fed. Rule Civ. P. 23(e)(2)(A)-(B). These arguments are meritless.

#### 1. Plaintiffs and Class Counsel have adequately represented the class

Objectors claim Gilmore "could not adequately represent the interests of Missouri purchasers" because he (1) did not plead full refund and punitive damages in Delaware; (2) lacked standing to pursue DCFA violations; and (3) received an incentive award. Obj. MFA Opp. at 14. Plaintiffs have already addressed these arguments above and previously, most extensively in their preliminary approval reply. *See* Dkt. No. 108 ("Pl. MPA Reply") at 12-13; *supra* § I(B); Pl. MFA at 30-32, 38. Notably, Objectors' adequacy argument does not contest several points in favor of

adequacy put forth in Plaintiffs' briefing.[8]

Objectors' argument Plaintiffs did not adequately represent the certified Missouri class in *Tomlinson* is premised entirely on their baseless aspiration they will do better. But Objectors' speculative belief they will achieve their best-case scenario at trial does not render Plaintiffs or Class Counsel inadequate (nor does it mean settlement approval is unwarranted). *See In re Apple iPhone 4 Prods. Liab. Litig.*, No. 10-2188, 2012 U.S. Dist. LEXIS 113876, at *10 (N.D. Cal. Aug. 10, 2012) ("objections seeking a 'better' result are not sufficient to overturn a settlement agreement"). In any event, Plaintiffs achieved the same kind of relief Objectors sought to achieve should they ultimately prevail—a partial refund.

Nor do service awards evidence 'inadequacy.' As explained previously, such awards are typical in similar cases and the amount is well within the range approved in this Circuit. Dkt. No. 122 ("Pl. Mot. Fees") at 22-23.

### 2. The Settlement was Negotiated at Arm's Length

Objectors make a number of '*Bluetooth* collusion' arguments regarding the procedures and bargaining positions during settlement negotiations. Obj. MFA Opp. at 6-7. These are, however, properly examined within the context of Rule 23(e), which Plaintiffs do here. Having completely abandoned their 'reverse auction' argument,[9] Objectors cook up two new criticisms of the settlement negotiations. In responding, Plaintiffs will not repeat the history previously provided of the settlement talks—which underscore their procedural integrity—respectfully referring the Court to same. *See* Pl. MFA at 9-10; *see also generally* Dkt. No. 94-1, Ex. 3 ("Welsh Decl.").

First, Objectors claim "[t]he parties purposely excluded the strongest plaintiffs from settlement negotiations[.]" *Id.* at 6. Second, Objectors claim the mediator was not made aware of the Missouri case, which—Objectors argue—caused the mediator to "assign…a low settlement

---

[8] Many of Objectors' arguments regarding *Bluetooth* collusion also suggest a lack of arm's length negotiations, though they do not properly address this as a Rule 23(e) factor. Accordingly, insofar as the Court examines this issue within the context of Rule 23(e), Plaintiffs respectfully refer the Court to its discussion of purported collusion, addressed *infra* § II.

[9] Objectors' Opposition to Pls.' Mot. for Preliminary Approval, Dkt. No. 106, at 18-24.

value." Obj. MFA Opp. at 7. This is nonsensical, as the state court Missouri-only *Tomlinson* case was not even procedurally postured to facilitate a nationwide settlement: it was filed and later certified (after the *Gilmore* mediation) as a Missouri-only state case. Further, Missouri purchasers represent only a tiny fraction of Class Members, meaning they had little or no leverage to influence talks. Finally, Plaintiffs had a series of cases against retailers, which had put significant pressure on Monsanto that the Missouri plaintiffs had no ability to alleviate. Notably, the Missouri case had not even achieved class certification at the time a deal was reached. Dkt. No. 109 at 8.

## II. THERE ARE NO SIGNS OF COLLUSION, AND THE COURT HAS ALREADY EXAMINED THE SETTLEMENT WITH A HEIGHTENED SCRUTINY

Objectors also contend "the *Bluetooth* signs of collusion require the Court to review this settlement with heightened scrutiny[,]" in addition to other signs of implicit collusion. Obj. MFA Opp. at 2. These arguments can be summarized as follows: (1) counsel received a disproportionate amount of the fee because the $45 settlement ceiling was 'illusory' (*id* at 3-4); (2) counsel's lodestar is based primarily on "failed" cases which "dwarfs the time they spent on this case" (*id.* at 4-5); (3) the settlement contains a 'clear sailing' arrangement (*id.* at 3, 5); (4) the settlement contains a fee reverter (*id.* at 3, 5); and (5) that the settlement contained a floor / ceiling structure comprising a reverter of unclaimed class funds (*id.* at 6).

But this Court has already found that "[t]he existence of parallel litigation brought by other firms, without more, is not enough to raise concerns that the parties entered into this settlement in bad faith[.]" MPA Order at ¶ 3. In any event, the issue is moot, as the Court has *already* engaged in a 'heightened scrutiny' of the settlement—the very relief Objectors seek.[10]

Of Objectors' six arguments, the first five have been briefed extensively by the parties,[11]

---

[10] "The Court has conducted an assessment of the fairness, reasonableness, and adequacy of the Settlement that is as rigorous as at the final approval stage and finds that the Settlement is fair, reasonable, and adequate[.]" MPA Order at ¶ 2 (citing this Court's Standing Order).

[11] This includes: (1) disproportionality due to an 'illusory' ceiling (Pl. MPA Reply at 24-28; Pl. Mot Fees at 10-13), (2) 'failed cases' lodestar theory (Pl. MPA at 2-5; Pl. MPA Reply at 29-30), (3) 'clear sailing arrangement' (Pl. MPA at 35; Pl. MPA Reply at 30-32), (4) purported fee reverter (Pl. MPA at 35; Pl. MPA Reply at 32), (5) unclaimed class fund reverter (Pl. MPA at 41).

8

and Plaintiffs respectfully refer the Court to the record to avoid repetition (and the Court has in large part already considered these issues). A few points, however, deserve addressing.

With respect to the purportedly illusory ceiling used to calculate the fund value, Objectors' reliance on *Roes*, *Briseño*, and *McKinney* are entirely misplaced, and only underscore the reasonableness of Plaintiffs' common fund valuation. Obj. MFA Opp. at 3-4. In those cases, for the requested fees would have amounted to 25% of the total cash consideration ultimately paid only with claims rates of 100% (*Roes*), 94% (*McKinney*), and 31% (*Briseño*)– rendering the fund valuation illusory.[12] That is a far cry from the 6% estimate utilized here.

Notably, Objectors previously insisted that the *floor* was essentially illusory, boldly predicting the claims rate would not exceed 1% (and more likely would be 0.5%). Tomlinson MPA Opp. at 29. This prediction, like their oft retried and rejected arguments, has not aged well.

Objectors also claim that "Gilmore counsel also tries to justify its fees using their time spent on allegedly 'related' cases [where] [t]hat time dwarfs the time they spent on this case." Obj. MFA Opp. at 4 (citing ECF 122-1). Plaintiffs have already described in detail their multi-faceted litigation strategy which brought Monsanto to the table. *See* Pl. MFA at 2-7.[13] Further, Objectors' distinction between cases ignores that the Settlement not only resolved the case with the "Gilmore" caption, but eighteen various lawsuits. Settlement, Ex. 1, at 1, 2, 6, 21-22. Objectors cite no authority for the proposition that a settlement may only resolve one action.[14]

### III. OBJECTORS' SUBCLASS AND NOTICE PROPOSALS ARE MISGUIDED

Objectors' assertion that Missouri class members are "entitled to their own subclass" is not before the Court.[15] Even if it were, the Court should only reject or impose conditions on the

---

[12] For calculations of these percentages, *see* Pl. MPA Reply at footnotes 33, 36, and 38

[13] Plaintiffs' lodestar has increased since filing their motion for attorneys' fees and costs, due to work done with respect to the ongoing claims process and final approval.

[14] Notably, Weeks was the only case that was dismissed with prejudice, and all others were voluntarily dismissed only after a settlement was reached (or well before for strategic reasons). Wade MFA Decl. ¶¶ 4-9

[15] Objectors' reliance on *In re Literary Works in Elec. Databases Copyright Litig.*, 654 F.3d 242, 253 (2d Cir. 2011), is misplaced. There, the Circuit's was concerned that a lead plaintiff with

Settlement at this stage, not rewrite it. *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 326 (N.D. Cal. 2018). The Parties would have to renegotiate an entirely new settlement to treat Missouri purchasers differently from the rest of the Settlement Class, rendering Objectors' proposal impractical and outside the Rule 23(e) analysis currently before the Court. Further, Objectors do not represent a Missouri subclass in this Action—they only represent two Missouri purchasers (Tomlinson and Richardson). Objectors' subclass proposal would also be unfair to other Missouri Settlement Class Members, thousands of whom made claims, and none of whom opted out.

Objectors also claim no new class notice would be necessary if the Court rejects this Settlement and approves a new settlement carving out Missouri Settlement Class Members. But speculation about the need for a new notice program for some future, revised settlement is irrelevant to the instant motion.[16] Unlike Objectors' distinguishable, out-of-circuit cases, the Court here is not being asked to consider new agreement terms.[17]

## CONCLUSION

For all of the aforementioned reasons, this Court should grant final approval of the Settlement.

---

two types of claims would focus his energies on maximizing the returns for the more valuable type of claim, to the detriment of class members who held the less valuable type. Here, the settlement value of Missouri class members' claims are the same as the rest of the Class, and no "independent counsel" is needed to make that assessment.

[16] Relatedly, Objectors appear to suggest Class Notice should have notified the Missouri Settlement Class Members of the *Tomlinson* case. *See* Obj. MFA Opp. at 1. But Objectors never objected to the proposed (and Court-approved) Class Notice, nor did they attempt to give class notice in their case. The Parties here were under no obligation to give notice of *Tomlinson* and doing so may have violated the stay issued in *Tomlinson*.

[17] *See* Obj. MFA Opp. at 13-14 (citing *Union Asset Mgm. Holding A.G. v. Dell, Inc.*, 669 F.3d 632 (5th Cir. 2012); *In re New Motor Vehicles Canadian Export Antitrust Litig.*, 800 F. Supp. 2d 328 (D. Me. 2011); *In re Airline Ticket Comm'm Antitrust Litig.*, 953 F.Supp. 280 (D. Minn. 1997)).

Dated: December 12, 2022         */s/ Gillian L. Wade*

GILLIAN L. WADE
SARA D. AVILA
MARC A. CASTANEDA
Milstein, Jackson, Fairchild & Wade, LLP
gwade@mjfwlaw.com
savila@mjfwlaw.com
mcastaneda@mjfwlaw.com
10990 Wilshire Blvd., 8th Floor
Los Angeles, CA 90024
Tel: (310) 396-9600
Fax: (310) 396-9635

JOEL OSTER
The Law Offices of Howard Rubinstein
joel@joelosterlaw.com
22052 W. 66th St. #192
Shawnee, Kansas 66226

*Counsel for Plaintiffs and the Settlement Class*